and Mr. D.B. Boyce is here for the appellate and Mr. Blackman for the appellate. May it please the Court, Andy D.B. Boyce on behalf of Brown, I am requesting that the Court evaluate the order of the District Court that denied Brown's application for qualified immunity on the Fourth Amendment excessive force claim and to direct that Brown be given immunity based on a motion for summary judgment and as well that the Court entertain honest interlocutory appeal the District Court's denial of the motion for summary judgment on the Heck v. Humphrey defense. On that second point, Mr. D.B. Boyce, why do you think we have jurisdiction to entertain that claim? Because the Heck order is inextricably intertwined with the qualified immunity analysis in this case in my view. The inextricably intertwined, evaluate that phrase, I think it's obviously intertwined. The question really is, is it inextricably? And I don't know there's a lot of authority on that point, but here's my argument. The inextricably would mean that one cannot be decided without the other. Now that being said, obviously that could happen. The better question I think is that one should not be decided without the other. And I believe that's the circumstance in this case that the policy behind Heck and the Heck ruling informs and is inextricably intertwined with the qualified immunity analysis. And because of that, I think it would be justified under that exception to reviewing a non-final order other than qualified immunity. And in fact, the Court did that in the Hadley-Guterres case. There's a, the name of the case escapes me, there's another case where that jurisdiction was refused in this circuit. So I think there's an internal split as well. But that's my view on that, Your Honor. All right. Thank you. We can't look and decide whether the officers in this case used excessive force and whether it was clearly established that the force was excessive without looking at the resisting arrest conviction? You can, but my position is you shouldn't. That's where the inextricably comes from. And that's because of what Justice Scalia expressed in the Heck case. Why Heck's important, why these, why it would be inconsistent, you know, to have a criminal conviction within a Section 1983 that implies, fairly broad term, implies the invalidity of that conviction. And maybe the root of it really is, it goes to the policy behind qualified immunity. That the law wants to provide immunity as the rule, non-immunity is the exception. If by evaluating the Heck principle, that generates immunity, that's, that's, that's my position. Okay. I got it. Okay. The district court, in its order, stated that it rejected Brown's arguments because they rested on Brown's version of the facts. And I, I, I respectfully disagreed with that interpretation. I'm well aware of the principle that on a qualified immunity summary judgment evaluation, we must look at the facts in a light favorable to the plaintiff, draw the emphasis in front of the, in favor of the plaintiff, look at it through a lens favorable to the plaintiff. And in my view, the motion and the presentation to the district court was meticulous about that. And, and, and argued from the standpoint of Mr. Kent's facts, Mr. Kent, Mr. Kent's facts that were stated in his deposition, his narrative, excuse me, narrative of the event. Now, I think the problem there may be a conflation of the principle that was just mentioned in the prior argument, that yes, the facts are viewed in a light most favorable to the plaintiff. However, the evaluation of force is done from the standpoint objectively of a reasonable officer. One of the things that we have in this case that we don't have in the prior case is, and I don't think anybody disputes the fact that Kent said, okay, you got me, I surrender, period. That's it. You got me, I surrender. And then his face is in the ant pile. And then after that, he surrendered, he's on the ground, he's handcuffed, he was tased twice and his head was put back into the ant pile. And Kent says it was intentional and deliberate, and Brown says it was not. Kent says it was intentional and deliberate, Brown says it was not. Why isn't that a credibility evaluation for the fact finder, especially if we look at the evidence in a light most favorable to Kent? Well, a couple of responses to that position. I mean, in his deposition, which is really the crux of the narrative answer through four or five pages, he says, and it's true, he said, okay, sir, you got it. You got me. However, in my view, in a qualified immunity analysis, that is a subjective matter. In other words, you may have a suspect say, I surrender subjectively. And I guess that's a fact to be considered perhaps in the calculus of the whole thing. But objectively, from the standpoint of an officer who's now tried to initiate a traffic stop in the evening, the person bolted, ran through several backyards around a shed, and then drops to their knees and says, okay, you got me. I don't think you have to accept, okay, fine, everything's fine, I don't have to touch you, I don't have to cop you, just get into the car. So that fact, even crediting... That's the only Graham versus Conner factor that I see and argue with me that favors the officers, that he ran away and he had to be subdued. There's three other factors, and one is, was he an immediate threat to the safety of the officers? It seems to me that favors Kent. Because if the initial force that was used may have been justified, but once he surrendered, he's no longer a threat to the officer. Once he surrendered and he's got his face in that ant pile, he isn't a threat to the officer anymore, right? I would disagree with that. I think we have to look at this arrest as a process. And it's not complete until, and this is what I say in my brief, and this is from case law, until Mr. Kent is under control, not resisting, and obeying commands. Now, even Kent says he's screaming and lifting his head up. Because his face is in an ant pile. But the officer didn't pick the ant pile as the place for the arrest. Mr. Kent did. And see, that's how I would distinguish and argue with you about that point. So put your face back in that ant pile, Mr. Kent. That fire ant pile, put your face back in that fire ant pile. He had hundreds of fire ant bites to his face, neck, chest, and eyes, requiring hospitalization, physical and psychological injuries. An officer is justified in using that force. I mean, the issue is whether or not the force was excessive. He can use some force, but excessive force, if he tells him my face is in an ant pile and the officer sees he's getting bit all over the upper part of his body with ants, then the officer is justified in putting his face back in the ant pile. There's no evidence the officer saw ants biting him all over his face. This was in the evening, in the dark. This is a fast-moving process. He tackled him to the ground. He's squirming. He does say, he's down. He says, there's an ant pile under my head. And the officer does curse at him and says, I don't care. Put your head back down, because he's trying to complete the cuffing process. He's just chased this individual in the evening through a residential neighborhood. He's already surrendered. Well, that's a subjective. He may, of subject, he only surrendered by his words. Surrenders, not the crux. It's whether he was under control, not resisting and obeying commands. From the objective viewpoint of the officer, he was still resisting. Now, it may be it was because of the ants, but the place where this happened was not selected by Officer Brown. So the thing is, this case presents highly idiosyncratic facts. There is no case from the U.S. Supreme Court, 11th Circuit, or Florida Supreme Court, which is relevant for clearly established law, that says an officer who arrests somebody by accident in an ant pile violates the Fourth Amendment when they don't remove the person from the ant pile before the handcuffing and restraint process is completed. The, in my view, I argue that the, thank you, Your Honor. All right. Thank you, counsel. We'll hear from Mr. Blackman. Thank you, Your Honors. May it please the court, Stanley Blackman for the appellate, Jermaine Kent. Under the plaintiff's version of the facts in this case, Officer Brown knowingly and intentionally held a compliant, non-resisting, non-threatening suspect's head in a pile of fire ants, yelled expletives at him while on top of him, and then tased him after he was handcuffed. The district court found that this conduct was objectively unreasonable under the circumstances and that this court's precedent clearly established that fact. What precedent is that, that you can't keep surrendered arrestees facing an ant pile? Well, Your Honor, there's not an ant pile case, but this court's precedent clearly establishes that this sort of gratuitous force on a compliant, non-resisting, non-threatening suspect violates the Fourth Amendment. And indeed, Best case? Your Honor, that would, for example, in Brown versus the city of Huntsville. This court held that it was a clearly established constitutional violation for a police officer to use pepper spray on a suspect who had submitted to the officer's authority, even though that suspect was not yet restrained. And this court has recognized that a case does not have to be directly on point. There can be notable factual distinctions between a prior precedent and the case at issue, so long as the constitutional question is beyond debate. And so the lawfulness of force does not depend on the precise means that an officer uses to apply it. And qualified immunity does not protect an officer just because his means of applying gratuitous force may be allegedly novel. And so in this case, the Graham factors that govern the objective reasonableness of force, they favor Mr. Kent in this instance. Not the first one. He ran away after the traffic stop. He was ordered to stop and he didn't. That's correct, Your Honor. But the second and third Graham factors, whether the suspect poses an immediate threat and whether the suspect is actively resisting or attempting to flee, favor Mr. Kent. And so based on those factors viewed in the light most favorable, at the time Officer Brown used the force complained of, the intentional exposure to fire ants and then a tasing after he was handcuffed, any resistance, those factors favor Mr. Kent. An officer cannot use gratuitous force just because a suspect initially fled. As the district court recognized, this court's precedent clearly established that an officer cannot hold a, at the point a suspect becomes compliant, an officer cannot hold his head in a pile of fire ants, yell expletives at him, tell him to put his face back in a fire ant pile, and then tase him after he was handcuffed. According to Mr. Kent, to the extent he remembers, what was the length of this encounter from the moment that he went down to the ground to the time that he was lifted up with cuffs on? Did he specify a timeframe? Was he asked about a timeframe? Your Honor, he was asked about a timeframe, but he did not know exactly how long he was in the ant pile. The record reflects that it was long enough for him to receive anywhere from hundreds to a thousand fire ant bites across his eyes, ears, face, chest, inside his eardrums, things like that. So the record suggests, particularly viewed in the light most favorable to Kent, that there was some time that he was lying in that fire ant pile. What do you have to say about the argument by Kent that he chose the ant pile as the place to surrender? Well, Your Honor, while that may be true, what the record evidence reflects is not that this was accidental on the part of Officer Brown, the exposure to the fire ants. Although Mr. Kent may have, at the time he dropped to his knees and surrendered, may not have known that a fire ant pile was there. As soon as he informed Officer Brown of the fact that his face was in a fire ant pile, Officer Brown did not then remain accidental or incidental. Officer Brown said, I don't care, put your face back in the fire ant pile and then held it there. So even if it's true that initially Officer Brown didn't know or Mr. Kent didn't know that they first stopped by a fire ant pile, the complaint of use of force is that once Officer Brown did know that, he intentionally and deliberately exposed Mr. Kent to that gratuitous force. And as the district court recognized, reasonable officers in Brown's position should have been on notice that holding Mr. Kent's head in a pile of fire ants and then tasing him while he was compliant violated the Fourth Amendment because this court has repeatedly held that a police officer does violate the Fourth Amendment when he uses gratuitous force on a suspect who has surrendered and no longer poses a threat. And Officer Brown's argument has been that the district court applied this constitute or defined the constitutional rule at too high a level of generality and that instead this court's precedent only clearly established that an officer couldn't use gratuitous force on a suspect who was, quote, under control and fully secured. There are two problems with that argument. First, even if control is an issue, this court's case has recognized that that control is established if the suspect has submitted to the officer's authority and is complying with the officer's commands. So, for example, again in Brown v. the City of Huntsville, that's a 2010 case before this incident, this court held that it was a clearly established constitutional violation to pepper spray a suspect who had submitted to the officer's authority and communicated her willingness to be arrested. Likewise, in Reese v. Herbert, this court held that it was a clearly established constitutional violation for officers to kick and beat a suspect who was lying face down on the ground. In Smith v. Maddox, a 1997 case, this court held that an officer could not use substantial force on a previously threatening and fleeing arrestee once he became docile and submitted to the officer's authority. And just a few weeks ago, in Glass-Cox v. the City of Argo, this court held that Smith, that 1997 case, quote, removed any doubt that a police officer could use substantial force on a suspect who had ceased any resistance or threatening behavior. And that's exactly what this case is. At the time, Officer Brown used force. At the time, he intentionally subjected Mr. Kent to fire ants and then tased him after he was handcuffed. Mr. Kent was compliant. He was not resisting. He posed no threat. He was no risk of flight. And this court's precedent, this court's cases hold that gratuitous use of force on such a suspect violates the Fourth Amendment, clearly violates the Fourth Amendment. Turning next to the heck issue. It can't. This may be getting into questions we don't have to decide now, but given that Mr. Kent was the one who decided at a certain point in time to say, you've got me, I basically give up and stopped at a certain point. If the officer had just put him on the ground enough time to put his hands behind him and cuff him and bring him up, the fact that he may have been bitten by a number of fire ants during that 10 or 15 seconds, that would not constitute excessive force, right? That's correct, Your Honor. But the distinction here is that this was not some incidental force. This was not a bite incident to the arrest. No, no. I know the facts here allegedly are different than the hypothetical, but it goes to show that the claim is really based on the officer keeping him down and forcing him to stay there with his head subject to bites after he complained. Correct, Your Honor. This Court has recognized that excessive force cases do turn on intentional actions of the officers in most cases, and that's what occurred here. There was intentional exposure to fire ants under Mr. Kent's version of the facts, and then intentional tasing after he was handcuffed. Turning to the heck issue, the District Court correctly denied that motion as well, but more importantly, it's not properly before this Court on interlocutory review. It's the denial of a heck-based summary judgment motion is not a final decision. It doesn't fall within the Court's pending appellate jurisdiction, and it's outside the scope of the collateral order doctrine. Indeed, a panel of this Court recognizes just that in Harrigan v. Metro-Dade Police Department, Station No. 4. There, that Harrigan, like this case, was an interlocutory appeal from a denial of qualified immunity. This Court affirmed the District Court's denial of qualified immunity and also refused to the District Court's rejection of the officer's heck defense. The Court held that it didn't meet the collateral order doctrine and that it was not even closely related for the purposes of pending appellate jurisdiction. And although Harrigan's not binding, it is correct, and this Court should follow it. First, pending appellate jurisdiction exists, if at all, if a non-appealable decision is inextricably intertwined with an appealable decision. But this Court has explained that pending appellate jurisdiction does not exist if the appealable decision, here qualified immunity, can be resolved without reaching the merits of the non-appealable decision, here heck. And that's the case here. This Court can decide whether Officer Brown violated Mr. Kent's clearly established constitutional rights based on his version of the facts without even asking whether Mr. Kent was ultimately convicted of anything. And for that reason, the panel in Harrigan recognized that not only were heck and completely separate and unrelated analyses, but they were indeed not even closely related questions. And although Officer Brown has argued that this Court should consider the question, because it's in the DNA of the qualified immunity analysis, the Supreme Court rejected a very similar argument in Swint v. Chambers County Commission. In that case, which was an appeal from the 11th Circuit, this Court exercised pending appellate jurisdiction to consider the question whether the county was an official policymaker. And the Court justified that on considerations of judicial economy, arguing that once the pretrial process had already been interrupted by an appropriate pretrial appeal, there was no cause not to consider defenses that could resolve the entire case. The Supreme Court rejected that argument, holding that it drifted away from the statutory commands of Section 1291 and the Final Judgment Rule. And so Swint makes clear that considerations of judicial economy cannot trump a clear statutory command. And nor is heck like an immunity right that would allow it to be immediately appealed under the collateral order doctrine. As this Court recognized in Dyer v. Lee, the actual underlying concern in heck was that Section 1983 and the habeas statute were on a collision course. And so in Dyer, this Court explained that, quote, heck was not intended to be a shield to protect police officers from Section 1983 suits. But when the Supreme Court allowed denials of qualified immunity to be immediately appealed, the Supreme Court recognized that that's because immunity could not be effectively reviewed on appeal from a final judgment because it granted a right not to be tried. And that right would be effectively lost if it were erroneously permitted to proceed to trial. Heck is not an immunity. Heck is a mere defense to liability. And heck is not intended to protect police officers from suit. And so that's why the Ninth Circuit in Cunningham v. Gates recognized that heck, unlike an immunity right, can be effectively reviewed on appeal from a final judgment without departing from the holding or purpose of heck. And for these reasons, Your Honor, although the District Court's heck ruling was correct, it's outside of the scope of this Court's appellate jurisdiction. And so this Court should affirm the District Court's denial of qualified immunity and should also dismiss Officer Brown's appeal of the heck ruling. If there are no further questions, I yield the rest of my time. Thank you. Thank you, Mr. Blackmon. Counsel? Am I pronouncing your name correctly? Debo Voice. Debo Voice, yes, sir. You know, the case is cited by the District Court in its order on this issue of surrendered and in control and that kind of thing. Saunders, Slicker, third one escapes me, all have the same fact pattern that I think the one cited by my colleague as well up here, that those people, when this force is used, the arrest process is over. They're up. They're moved somewhere else. Almost all of them, to my recollection, involve that kind of context. And that is what I tried to portray in my brief, why this one's different. This case is, the arrest process is not really complete when the second tasing happens. The arrest process... The handcuffed when the second tasing happens? Yeah, but he's still on the ground. He was still a threat. Just because someone's handcuffed doesn't mean they're no longer a threat. There is simply no way they could do all kinds of things. They're not, they're no longer a threat until they're up and under control and away. That's my view of that. So I think that's, if you look very closely at the cases cited by the District Court and my colleague, that they're quite different from the unique situation that this case presents. And with respect to Heck, on the substantive part of it, I think this is fair rebuttal, not the jurisdictional. It occurs to me that, hypothetically, because the district judge said in his order, I can't tell if the plea was to obstruction because he ran or if the plea is to obstruction because he resisted during the arrest processes. I'm paraphrasing, but I think that's what the District Court said. But it occurs to me that, hypothetically, let's say the state of Florida, after this plea, refiled a second information and said, we think your plea was only to running. We're not going to charge you with misdemeanor obstruction during the arrest process. What would the criminal defense lawyer do? Worth their assault? Double jeopardy. My plea resolved everything that was in the... But that's not what happened. No, I understand. He pled guilty only to the actions preceding his surrender and arrest. Right? He didn't plead guilty. I mean, the actions after his surrender and arrest. I don't, I don't, I don't, I don't agree with that characterization of the record. I think what you have in the record are, it's from the criminal case file, and this was proved up. It's the incident or arrest report itself is filed in the criminal case. There's the information, which is not particular. It just says obstructed in the lingo of the statute. And then you have the plea document, which is just a form. That's what we have so far. So my point is that the plea was global and that therefore it does inform... Well, he pled no, right? Not guilty, right? I'm sorry, Your Honor? He pled no contest, right? He pled, but he was convicted. He was adjudicated. So, so I would ask that the, ask that the judge of the district court be reversed. That immunity be awarded to Brown and or the heck argument be reversed. Thank you. All right. Thank you, counsel. And Mr. Blackman, we see that you were appointed to represent Mr. Brown in this case. And the court thanks you for your service. Thank you, Your Honor. Court is in recess until nine o'clock tomorrow morning. All rise.